**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

Civil Action No. 18-cv-00746-MSK-SKC

GSL GROUP, INC.,

     Plaintiff,

v.

TRAVELERS INDEMNITY COMPANY,

     Defendant.

_____

**OPINION AND ORDER OVERRULING OBJECTIONS, DENYING MOTION TO
DISMISS, AND GRANTING IN PART AND DENYING IN PART MOTION TO AMEND**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Travelers")

Objections (**# 86**) to the Magistrate Judge's October 8, 2019 Amended Discovery Order (**# 82**)

which denied certain of Travelers' discovery requests on attorney-client privilege grounds, to

which no apparent response was filed by Plaintiff GSL Group, Inc.'s ("GSL"); GSL's Motion for

Judgement on the Pleadings (**# 99**) on Travelers' Twelfth Affirmative Defense, Travelers'

response (**# 114**), and GSL's reply (**# 118**); Travelers' Objections (**# 105**) to the Magistrate

Judge's December 5, 2019 discovery ruling (**# 98**), to which no apparent response was filed by

GSL; and Travelers' Second Motion to Amend (**# 117**) its Answer and assert Counterclaims,

GSL's response (**# 121**), and Travelers' reply (**# 123**).

## FACTS

The Court assumes the reader's familiarity with the background of this case and the

proceedings to date. In summary, GSL owns certain commercial property in Denver, Colorado

that was insured by Travelers. On June 5, 2015, a hailstorm allegedly caused damage to GSL's

property, and GSL made a claim on the Travelers policy.  GSL retained a public adjuster, Derek

O'Driscoll, and his firm, Impact Claim Services ("Impact"), to pursue the claim.  The parties

were unable to reach an agreement on the value of the loss (and thus quantification of the claim)

and, pursuant to policy provisions, engaged in an appraisal proceeding.  GSL selected Juan

Cartaya as its appraiser.  In September 2017, the appraisers agreed that the loss was

approximately $1.6 million.  In October 2017, Travelers paid the agreed-upon amount.

GSL then commenced the instant action, alleging claims for: (i) common-law bad faith

breach of contract, and (ii) unreasonable delay in payments in violation of C.R.S. § 10-3-1115

and -1116.  In response, Travelers raised a number of affirmative defenses, including that GSL's

claims were barred due to GSL's non-compliance with policy provisions requiring "that both

parties select a competent and impartial appraiser."  Several motions are now pending, as

discussed in detail below.

### A.  Travelers' Motion to Amend

Travelers' Amended Answer **(# 19)**, filed on May 4, 2018, contained numerous

affirmative defenses, but no counterclaims.  The Twelfth Affirmative Defense alleged that GSL

breached the Policy by appointing a biased appraiser and its Sixteenth Affirmative Defense that

which alleged that GSL had failed "to provide accurate and truthful information to Travelers

regarding its estimates".

In January 2019, Travelers moved **(# 51)** for leave to amend its Answer to assert

counterclaims, including counterclaims seeking vacatur of the appraisal award due to Mr.

Cartaya's partiality, for breach of contract, unjust enrichment, and recoupment.  Among the facts

alleged in the proposed counterclaims were that:

> • Mr. O'Driscoll "included items in his estimate, specifically with
> regard to repairing the Property's roof, that were substantially

overstated" and that Mr. O'Driscoll "included multiple items twice in his estimate – increasing his overall estimate of repairs drastically and erroneously."  *Docket* # 51-1, Counterclaims ¶ 35.

• Travelers requested that Mr. O'Driscoll provide "breakdowns for the lump-sum bids" from contractors that Mr. O'Driscoll included in his estimate, "but Mr. O'Driscoll refused to provide the breakdowns."  ¶ 37.

• That Travelers had discovered various facts that demonstrated that Mr. Cartaya was not an impartial appraiser, mostly relating to his extensive business referral relationships with Mr. O'Driscoll and GSL's attorneys, the Merlin Law Firm ("Merlin"), and that Mr. Cartaya had worked on a contingency fee basis with those entities in the past. ¶ 75-104.

This Court denied **(# 77)** Travelers' motion to Amend its Answer, noting that although Travelers claimed it had only recently discovered evidence of Mr. Cartaya's partiality, Travelers had asserted Mr. Cartaya's partiality nearly 10 months earlier in its Twelfth Affirmative Defense in its Amended Answer filed in May 2018.  Thus, the Court found that Travelers had not shown good cause to permit a late amendment under Fed. R. Civ. P. 16(b)(4).

In January 2020, Travelers filed the instant motion **(# 117)**, again seeking leave to amend its Answer to assert counterclaims.  This time it seeks to assert: (i) a claim for vacatur of the appraisal award due to fraud, owing to Mr. Cartaya having a personal financial interest in the outcome of the appraisal and because Mr. Cartaya made false representations to Travelers' appraiser about the contents of a particular contractor's bid; (ii) a claim for vacatur of the appraisal award due to mistake, because both appraisers misunderstood the contents of that same contractor's bid, resulting in what was effectively a double payment for the contractor's work; (iii) a claim for vacatur of the appraisal award due to Mr. Cartaya's partiality; (iv) a claim for common-law breach of contract, in that GSl violated the appraisal provisions of the Policy by appointing a biased appraiser and by concealing or misrepresenting certain facts relating to

contractors' bids; (v) a claim for common-law unjust enrichment; and (vi) a claim for

recoupment.  Travelers argues that it diligently pursued discovery in this case, but only recently

learned that:

> • Mr. O'Driscoll provided Travelers with only lump-sum estimates
> from two contractors and refused to provide the contractors'
> detailed price calculations, stating that the contractors had claimed
> that their detailed price calculations were "confidential."  *Docket #*
> 123-1, Counterclaims ¶ 23-24.  Although the proposed
> counterclaims do not allege as much, Travelers' motion contends
> that Travelers subsequently learned that the contractors had never
> claimed that their price calculations were confidential and that the
> contractors were willing to have their detailed calculations shared
> with insurers like Travelers.
>
> • A contractor called Lefever provided Mr. O'Driscoll with an
> estimate for performing the full scope of necessary roofing work of
> roughly $603,000.  ¶ 55.  Of that sum, about $27,000 was allocated
> to the cost of replacing roof purlins.  ¶ 56.  Mr. O'Driscoll
> provided the Lefever estimate to Mr. Cartaya.  ¶ 58.  During the
> appraisal proceedings, Mr. Cartaya represented to Travelers'
> appraiser that Lefever's cost for replacing the purlins was
> $603,000, and that Lefever had estimated an additional $556,000
> for all of its remaining work.  ¶62-64.  Mr. Cartaya's appraisal
> calculations thus included duplication of nearly all of Lefever's
> costs, essentially doubling Lefever's estimate.  During his
> deposition in this case, Mr. Cartaya defended the charge for
> $603,000 for replacing the purlins alone by stating that he obtained
> an oral estimate in that amount from a Lefever representative
> during a phone call.  ¶ 67.  Travelers alleges that Lefever's
> representatives deny having any such conversation with or giving
> such an oral estimate to Mr. Cartaya.  ¶ 71-73.  Travelers contends
> that Mr. Cartaya's representations about the alleged oral estimate
> from Lefever were "knowingly false," constituting fraud.  ¶ 67.
>
> • Through discovery in this case, Travelers has learned that Mr.
> Cartaya's contract with GSL provided that Mr. Cartaya would be
> entitled to a lien, up to the amount of his fee, on proceeds received
> by GSL from Travelers.  ¶ 37.  Thus, Travelers contends that Mr.
> Cartaya had a "direct financial interest in any appraise award" and
> a "direct financial incentive to cause additional money to be
> awarded to GSL in the appraisal to ensure that insurance money
> would be available to ensure payment of his appraisal fee."  ¶ 41,
> 42.  Although the proposed counterclaims do not assert as much,

the Court can infer that Mr. Cartaya did not disclose the fact of this lien to Travelers during the appraisal process.

• During his deposition in this case, Mr. Cartaya apparently testified that, as an appraiser, he "advocate[s] for myself, but mainly [for] whoever hires me."  ¶ 45.  Travelers contends that this testimony constitutes an admission to conduct that would render Mr. Cartaya "partial" under Colorado law.

As has been explained it the prior order addressing pleading amendments, the set in the Scheduling Order has long since passed.  Thus, Travelers must make two separate showings: (i) that there is good cause under Fed. R. Civ. P. 16(b)(4) to the Scheduling Order's deadlines; and (ii) that grounds exist under Fed. R. Civ. P. 15(a) for amendment.  *Birch v. Polaris Industries, Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015).  The Rule 16 inquiry focuses on Travelers' diligence, for example: did it learn of new information through recent discovery.  If so, good cause for extending the deadline in the Scheduling Order might exist.  But if Travelers knew of the underlying information but failed to promptly raise the new claims, leave to amend should be denied.  *Id.*   Once this hurdle has been crossed, then Rule 15 comes to the fore.  The Rule 15 inquiry favors liberal allowance of amendments, but authorizes the Court to deny leave to amend where the proposed amendments are futile, dilatory, or the product of undue delay, among other grounds.  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

The Court grants that portion of the motion that seeks to add counterclaims stemming from Mr. Cartaya's alleged misrepresentation to Travelers about the contents of Lefever's bid, but denies the motion in all other requests.  Although there is evidence in the record of various written bids by Lefever that may have been in Travelers' possession as of January 2019, the record appears to reflect that it was not until Travelers deposed Mr. Cartaya in December 2019 that it was possible to discern how the various Lefever bids – including, importantly, the alleged "oral bid" received by Mr. Cartaya led to the appraisal award.  The Court is satisfied that

Travelers moved diligently upon learning of these facts during Mr. Cartaya's deposition in December 2019, bringing the instant motion in January 2020, thus meeting the requirements of Rule 16. As this claim, GSL does not substantially argue that, if the requirements of Rule 16 are met, that Travelers should nevertheless be denied leave to amend under the standards of Rule 15. Moreover, the Court finds no basis to conclude that Travelers' counterclaims relating to Mr. Cartaya's inclusion of a possibly fictitious oral "bid" from Lefever are futile, dilatory, the product of undue delay, or that they are unreasonably prejudicial to GSL.

But the other proposed counterclaims premised  do  not meet the requirements of Rules 15 and 16. Beginning with Rule 16,  The Court also finds that Travelers has long been aware of Mr. Cartaya's advocacy on behalf of insureds.  *See e.g.* Docket # 51 at 5 (January 2019 Motion to Amend noting "Cartaya Insurance Appraisers openly advocates for policyholders on its website"). Mr. Cartaya's admission at his deposition that he "advocates" for whoever hires him does not materially alter the information that Travelers has long known, rendering amendments based on this fact untimely under Rule 16. Finally, even assuming Mr. O'Driscoll falsely represented to Travelers that certain contractors' line-item bids were "confidential," the Court is not persuaded that Travelers has acted diligently for purposes of Rule 16 upon allegedly discovering that fact in or about June 2019. Moreover, Travelers' January 2019 motion reflects that Travelers was already aware of Mr. O'Driscoll's refusal to provide detailed contractor bids by that date.

This leaves a claim based upon the creation of a lien on insurance proceeds to ensure payment of Mr. Cartaya's fees. Assuming, without deciding, that Rule 16 would authorize a modification of the deadline in the Scheduling Order for this claim, it is futile. It is undisputed that Mr. Cartaya's contract provided for the creation of a lien against insurance payments made

to GSL to ensure payment of his professional fees.   Travelers points to no authority under Colorado law that suggests that a lien to secure payment of an appraiser creates a presumption that the appraiser "partial".  Indeed, in *Owners Ins. Co. v. Dakota Station II Condominium Assn.*, 443 P.3d 47, 53-54 (Colo. 2019), the court facts that are arguably more egregious than those presented here, and found no presumption of partiality.  In *Owners,* a fee cap potentially linked the *amount* of the  appraiser's pay to the *amount* of the appraisal award.  Even there, the court found no presumption of partiality.  Under Mr. Cartaya's contract, there is nothing that correlates the amount of his fee to the amount of the appraisal award.  All the creation of a lien on the award does is ensure payment of Mr. Cartaya's fee.  Finding that the lien would have no effect on Mr. Cartaya's partiality under Colorado law, a counterclaim based on this theory would be futile.

Accordingly, Travelers' motion is granted in part.  Travelers may amend its Answer to interpose only those counterclaims that are supported by the allegations regarding Mr. Cartaya's misrepresentations about the amount and content of the Lefever bid.  That amendment shall be made within 14 days of this Order.  The motion is denied in all other respects.

**B.  GSL's Motion for Judgment on the Pleadings**

Travelers' Twelfth Affirmative Defense to GSL's claims asserts that GSL's claims

> are barred or reduced on account of the terms, provisions,
> limitations, or exclusions in the Policy, including but not limited to
> the Policy's appraisal provision that requires that both parties
> select a competent and impartial appraiser.

GSL moves for judgment on its favor as to that defense, arguing that the defense is moot because none of GSL's claims involve a claim under the terms of the Policy itself; rather, GSL's claims

invoke only common-law and statutory claims of bad faith. [1]  GSL also notes that, after both appraisers agreed on a valuation of the claim, Travelers paid the claim without a reservation of rights.

Under Colorado law, a statutory bad faith claim arises when an insurer "unreasonably delay[s] or den[ies] payment of a claim for <u>benefits owed</u>" under a policy.  C.R.S. § 10-3-1115(1)(a) (emphasis added).  Courts reciting the elements of statutory bad faith often truncate the discussion to two simple elements – (i) that the insurer acted unreasonably, and (ii) that the insurer new or recklessly disregarded the unreasonableness of its conduct.  *See e.g. Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1236 (10th Cir. 2020).  But implicitly, there is also a third element that the claim concerns benefits owed under the policy.  It is axiomatic that a statutory bad faith claim must involve a loss that is actually covered by the policy itself.[2]  *Gerald H. Phipps, Inc. v. Travelers Property Cas. Co. of Am.*, 679 Fed.Appx. 705, 710 (10th Cir. 2017), *citing MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as in the case here, coverage was properly denied").  Moreover, under the Colorado statute, the remedy for a statutory bad faith claim is "two times the <u>covered benefit</u>."  C.R.S. § 10-3-1116(1) (emphasis

---

[1]  Travelers contends that GSL's motion must be considered under Rule 12(f), which requires the motion to be brought within 21 days of Travelers' answer, rather than Rule 12(c) which has no time limit.  *Citing SEC v. Thomas*, 116 F.R.D. 230, 232 (D.Ut. 1987) *among others*.  Because this Court denies GSL's motion on the merits, the Court need not reach the issue of which subsection of Rule 12 controls the analysis herein.

[2]  Conceivably, there may be situations where the claimed of unreasonableness involved matters collateral to the question of coverage, such that a proper denial of coverage does not vitiate the insurer's unreasonable conduct.  But here, it is clear that GSL's bad faith claims arise from Travelers' failure to pay the allegedly covered claims earlier and thus, the issue of coverage necessarily undergirds GSL's bad faith claims.

added).  It stands to reason that if there is no coverage under the policy, there is no "covered benefit" that has been denied or delayed.  Thus, assuming that Travelers can ultimately prove that some act by GSL nullified a grant of coverage under the Policy, Travelers' Twelfth Affirmative Defense could prevent GSL from recovering on a statutory bad faith claim. Accordingly, Travelers' defense is properly interposed in response to GSL's statutory bad faith claim.[3]

GSL argues that Travelers conceded coverage of the claim and even paid the appraised amount of the claim without reservation of rights.  Thus, GSL argues, Travelers cannot now take the position that no coverage exists under the Policy.  This argument has largely been rendered moot by the Court's ruling above that Travelers may now interpose counterclaims that assert conduct by GSL that could amount to a breach of the Policy's appraisal clause and operate to withdraw coverage of the loss.  In any event, the arguable merit of Travelers' affirmative defense is one that would turn on disputed facts and is thus beyond the reach of a Fed. R. Civ. P. 12 motion.  On a Rule 12 motion, the Court must take the facts in the light most favorable to the non-movant – Travelers.  *See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000).  Thus, this Court must assume that Travelers can marshal sufficient facts to demonstrate that its acquiescence in the appraisal and payment of the claim without reservation does not now estop it from denying that coverage of the claim was available under the Policy.

Accordingly, GSL's motion for judgment on the pleadings as to Travelers' Twelfth Affirmative Defense is denied.

---

[3]     Because the defense is properly pled as against one of GSL's statutory claim, the Court need not reach the question of whether the defense is also properly directed at GSL's common-law bad faith claim.

### C.  Objections to discovery rulings

Pursuant to Fed. R. Civ. P. 72(a), Travelers objects to two rulings by the Magistrate Judge regarding discovery.  In both instances, the Court reviews the objected-to portions of the Magistrate Judge's ruling, reversing only if the the Magistrate Judge's conclusions are clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a).  A factual finding is "clearly erroneous" if, after reviewing the matter, this Court is left with a "definite and firm conviction that a mistake has been made."  *Scalia v. Paragon Contractors Corp.*, 957 F.3d 1156, 1161 92020).

### 1.  October 8, 2019 ruling

In September 2019, the parties notified the Magistrate Judge of the need to resolve a discovery dispute over certain e-mails that Travelers was seeking to obtain from GSL **(# 79)**.  That discovery dispute appears to have been two-pronged.  First, although the specific discovery requests do not appear to be in the record, a dispute appeared to turn on the question of whether e-mail communications between GSL and its counsel lost their attorney-client privileged status because Mr. O'Driscoll was also copied on the e-mails.  Second, Travelers propounded certain interrogatories to GSL that requested answers as to whether "you [GSL], your public adjuster [Impact], or your attorneys [Merlin]," performed certain actions.  GSL answered based on information within its own knowledge but objected to answering based on information known only to Impact or Merlin.

On October 8, 2019, the Magistrate Judge ruled **(# 82)** on both issues.  As to the privilege issue, the Magistrate Judge found that Mr. O'Driscoll/Impact's involvement with the e-mails did not destroy the privileged character of the e-mails because Impact was acting as GSL's agent or in a commonality of interest with GSL.  As to the issue of responding to the interrogatories based on Impact or Merlin's knowledge, the Magistrate Judge held that the information sought was

information obtained by these parties independently of the litigation itself, and thus, GSL had no obligation to provide answers based on Impact or Merlin's knowledge.

Travelers filed timely Objections (**# 86**), contending that: (i) the Magistrate Judge erred in relying on unsworn argument made by GSL's attorney, Mr. Mammel, regarding Mr. Mammel's need to involve Mr. O'Driscoll in various discussions, and that evidence in the record contradicts Mr. Mammel's arguments; (ii) that the Magistrate Judge misapplied *Alliance Const. Solutions, Inc. v Department of Corrections*, 54 P.3d 861 (Colo. 2002), because the evidence did not demonstrate that Mr. O'Driscoll was acting as an agent of GSL for purposes of the communications; and (iii) that the Magistrate Judge erred in finding that the work of Impact and Merlin during appraisal proceedings involving GSL were "detached from" work on this case because Impact and Merlin represented GSL during appraisal proceedings and GSL had an obligation to disclose the requested information during those proceedings.

(a).  Privilege

It is well-settled under Colorado law that confidential communications between an attorney and client for the purpose of obtaining or giving level advice are privileged from discovery.  It is equally well-settled that those communications can lose their privileged character if the confidential nature of the communication is polluted if a third party is present during the communication.  *Fox. v. Alfini*, 423 P.3d 596, 600 (Colo. 2018).  In *Alliance*, the Colorado Supreme Court considered the question of whether an independent contractor associated with the client entity was a third party to the attorney-client relationship, thus spoiling the privileged nature of a three-way communication between attorney, client, and contractor, or whether the contractor was effectively an agent of the client entity, allowing the communication to retain its privileged character.  The Court held that the privilege continues to apply where "the

information-giver" – that is, a person who is either conveying information to an attorney for the purpose of obtaining legal advice, or a person who is receiving legal assistance or advice from an attorney -- "[is] an employee, agent, or independent contractor with a significant relationship not only to the [ ] entity but also to the transaction that is the subject of the [ ] entity's need for legal services." 54 P.3d at 869.

In order to determine Mr. O'Driscoll's status relative to the communications at issue here, it is necessary to elaborate somewhat on the factual scenario in which those communications arose. And in doing so, the Court must also acknowledge that the record is relatively sparse as to the particular details. Nevertheless, based on this Court's review of the record, it appears that the hail event that caused the damage to GSL's property occurred on June 5, 2015. At some point in time, GSL retained a company called Abbotts to perform water mitigation services on the property arising from the hailstorm.  In the meantime, GSL had sought insurance benefits from Travelers relating to storm damage, but it appears that Travelers quickly denied that claim. Thus, GSL was initially responsible for paying for Abbotts' work itself. Abbotts performed the work, but a dispute arose between GSL as to unspecified aspects of Abbots' work. That dispute blossomed into litigation in which Abbotts sued GSL for payment for the work and GSL interposed counterclaims about the work Abbotts had performed. In that lawsuit, GSL was represented by an attorney named John Carver.

On July 2, 2015, GSL retained Mr. O'Driscoll and Impact to help press GSL's claim with Travelers over the hailstorm. Mr. O'Driscoll's work entailed identifying the various items of property damage caused by the hailstorm, determining what repairs and remediation would be required, and determining the cost of those services. Although Mr. O'Driscoll and Impact were not hired by GSL to specifically address or consult with Mr. Carver for purposes of the Abbotts

lawsuit, the record seems to suggest that the loss that GSL suffered with regard to the water intrusion that Abbotts was hired to remediate was a component of the hail storm claim that Mr. O'Driscoll presented to Travelers on GSL's behalf.  Thus, it appears that GSL included Mr. O'Driscoll on its communications with Mr. Carver about the Abbotts work and ensuing lawsuit. Ultimately, Travelers agreed to provide coverage for some loss from the hailstorm, and that Travelers compensated GSL for a considerable portion of the work performed by Abbotts.

The majority of the e-mails for which GSL claims privilege entail communications between GSL's principal and Mr. Carver, on which Mr. O'Driscoll is either a recipient or is copied.  Also, at issue are several e-mails from Mr. Mammel, GSL's counsel in this action, and GSL's principal, on which Mr. O'Driscoll is copied.

Travelers' first argument in support of its Objections is that the Magistrate Judge erred by crediting an unsworn assertion of fact offered by GSL's counsel during oral argument, and that by doing so, the Magistrate Judge ignored conflicting deposition testimony in the record. Travelers' argument on this point is brief and somewhat unclear.  The Magistrate Judge's Order found that:

> According to GSL's attorney, Chris Mammel, he and a different attorney for GSL – John Carver, who represented GSL in a different lawsuit against Abbotts [ ] – discussed various matters with Mr. O'Driscoll bearing on their respective representation of GSL.  For example, Mr. Mammel stated that it was necessary for him to communicate with Mr. O'Driscoll to prepare the filing of this case.  He further indicated that there were conversations he had with GSL regarding his preparation of discovery in which Mr. O'Driscoll was on the phone due to his knowledge of events and due to his role as a consultant for GSL in presenting GSL's claim to Travelers.

Travelers does not specifically explain in what respect this finding by the Magistrate Judge is in conflict with the excerpts of deposition testimony by Mr. O'Driscoll or Steve Gallagher, GSL's

principal that were attached to the discovery dispute memorandum.  This Court has reviewed those transcripts and sees nothing therein that is inconsistent with the Magistrate Judge's findings; indeed, the deposition transcripts confirm that although Mr. O'Driscoll was not specifically hired for and had no direct involvement in the lawsuit against Abbotts, he was often asked by GSL to consult about the scope of the work that Abbotts had performed, both to assist GSL in addressing that lawsuit and for purposes of pursing GSL's broader claim against Travelers.  For example, Mr. Gallagher testified as follows:

> Q:  Did you have anyone else that was working for or with GSL at the time that had conducted as specific an investigation into the damage conditions at the property as Mr. O'Driscoll had?
>
> A:  No.
>
> Q:  In order for you and your attorney to make decisions regarding the Abbotts lawsuit, were there times when you needed specific information about the damage conditions that only Mr. O'Driscoll had?
>
> A:  Yes.
>
> Q:  Is it consistent with your recollection that often either Mr. Carver or yourself would copy Mr. O'Driscoll on communications about the Abbotts lawsuit in order to be able to get specific factual information that he possessed about the damage conditions?
>
> A:  Yes.

Docket# 79-2 at 3 (objections omitted).[4]  Thus, the record adequately supports the Magistrate Judge's findings that GSL called upon Mr. O'Driscoll to provide Mr. Carver with information

---

[4]      Travelers argues that the Court should ignore Mr. Gallagher's response to these questions because they are leading.  It is not clear whether Travelers raised that argument with the Magistrate Judge, but even if it did, it appears that the Magistrate Judge decided to credit Mr. Gallagher's testimony in any event.  The "clearly erroneous" standard of Rule 72(a) requires a considerable degree of deference to the Magistrate Judge's assessments of credibility, and this Court cannot say that the Magistrate Judge was fundamentally mistaken in crediting the quoted portion of Mr. Gallagher's testimony even though it was adduced through leading questions.

about the water damage to facilitate Mr. Carver's handling of the Abbotts lawsuit, as well as to provide Mr. Mammel with information about the insurance claim as a whole to facilitate Mr. Mammel's handling of this lawsuit.

Travelers' second argument in support of its Objections is somewhat predicated on its first. Travelers argues that under the *Alliance* standard, Mr. O'Driscoll was not an "information giver" to Mr. Carver (or a recipient of Mr. Carver's advice) because he had no involvement with the Abbotts lawsuit. (Travelers' Objections do not appear to specifically challenge the Magistrate Judge's findings that Mr. O'Driscoll was properly deemed to be an agent of GSL with regard to correspondence with Mr. Mammel about this lawsuit.) As previously found, the record reflects that GSL relied upon Mr. O'Driscoll to provide Mr. Carver with information about the Abbotts work, and about the insurance claim as a whole, for purposes of GSL deciding how to proceed in the Abbotts lawsuit. Thus, this Court agrees with the Magistrate Judge that Mr. O'Driscoll was an "information giver" that had a significant relationship with GSL with regard to the hailstorm, the Abbotts work, and the insurance claim as a whole.

Travelers also argues that Mr. O'Driscoll does not fit within *Alliance*'s exception because his relationship with GSL was not specifically an agency relationship, pointing to various portions of Mr. O'Driscoll and the GSL principals' depositions where those witnesses deny that Mr. O'Driscoll was "an agent of GSL." But it appears that the witnesses were either offering lay understandings of the word "agent" or were unclear on what the particular legal requirements of agency are. For example, after denying that he served as GSL's "agent" for purposes of pursuing the insurance claim, Mr. O'Driscoll explained that his representation of GSL was "limited in scope to conducting an investigation, being a conduit to the carrier as far as presenting that information, presenting information at GSL's request where appropriate," and that "[m]y clients

make decisions.  There's things that I am able to do without their authority [but] a lot of it requires their authority and approval."  *Docket # 79-3 at 2.*  Similarly, Mr. Gallagher testified that Mr. O'Driscoll and Impact "worked for us, [ ] talking with the insurance company."  He explained that "any sort of big decision or major decision" – later clarified to mean "anybody that we hire," the "financial side of things," and "where we are going with a case" – "would need to be discussed with me and agreed to by me," implying that Mr. O'Driscoll was granted authority to make lesser decisions that would nevertheless bind GSL.  *Docket # 79-2 at 2.*  It is clear from the record that Mr. O'Driscoll exercised a considerable amount of authority to convey information to Travelers about the claim or withhold it, to discuss the claim on GSL's behalf, and to attempt to reach an agreement with Travelers on the claim that GSL would accept.  These actions are clearly consistent with Mr. O'Driscoll and Impact acting as GSL's agent.

Accordingly, this Court finds that the Magistrate Judge's conclusion that Mr. O'Driscoll's role in the correspondence between GSL and its counsel fit within the exception recognized by *Alliance* was neither clearly erroneous nor contrary to law.  The Court overrules Travelers' objections and affirms the Magistrate Judge's ruling denying Travelers' request for production of the subject e-mails.

### (b). Interrogatories

Two of Travelers' interrogatories to GSL are at issue here.  Interrogatory 16 inquired about "all [ ] matters for which you [GSL], your public adjuster Claim Impact Services and/or Derek O'Driscoll, or your attorneys Chris Mammel or Tamara Chen-See of the Merlin Law Group" had retained Mr. Cartaya in various capacities.  Interrogatory 17 inquired about "all written or oral terms of any agreement that you [GSL], your public adjuster Claim Impact Services and/or Derek O'Driscoll, or your attorneys Chris Mammel or Tamara Chen-See of the

Merlin Law Group" have entered into with Mr. Cartaya.  Importantly, both interrogatories

excepted "the subject matter of this lawsuit" – that is, GSL's retention of Mr. Cartaya for

purposes of the instant dispute.  Thus, the two interrogatories effectively inquired about those

circumstances in which GSL, Impact, Merlin, and their various principals had retained Mr.

Cartaya's services in <u>unrelated cases</u>.  GSL responded with regard to its own knowledge of

events at issue, but denied that it had any right to obtain responsive information from Impact,

Mr. O'Driscoll, or Merlin.

  In ruling on the dispute, the Magistrate Judge focused solely on the interrogatories to the

extent they inquired about information from Merlin.  The Magistrate Judge noted that courts

afford differing treatment to material possessed by a client's attorney based on when and why the

attorney acquired the information.  The Magistrate Judge found that "the information [Travelers]

seeks with its interrogatories involves information in counsel's possession that exists or was

developed independent of the current case," (as opposed to information that counsel obtained

arising out of the instant case) and that such information is not generally discoverable.  *Citing*

*XTO Energy Inc. v. ATD, LLC*, 2016 WL 1730171 (D.N.M. Apr. 1, 2016).  The Magistrate Judge

explained that compliance with the interrogatories would require Merlin "to research [its] client

files to locate <u>all other matters</u> in which a client of theirs (or the lawyers) hired Mr. Cartaya."

(Emphasis added.)

  Travelers' Objections argue that the information requested in the interrogatories was int

"detached from counsel's work on the instant case" because the information about Mr. Cartaya's

past association with Impact and Merlin was information that should have been disclosed to

Travelers as part of the appraisal proceedings.

Fed. R. Civ. P. 33(b)(1)(A) provides that interrogatories must be answered "by the party to whom they are directed" – in other words, GSL.  And it appears to be undisputed that GSL itself has no knowledge of the circumstances in which Merlin or Impact has retained Mr. Cartaya's services in other cases.  Thus, the question before the Court is whether GSL is obligated to solicit information from Merlin – a non-party in this case – in order to answer the interrogatories.  In this respect, this Court agrees with the Magistrate Judge that *XTO Energy* provides a persuasive analysis.

In *XTO*, which also involved an insurance coverage dispute, the defendant insurer sent a discovery request to plaintiff XTO, asking it to produce documents that were in the possession of XTO's attorneys – namely, agreements between the attorneys and other insurance companies and billing documents relating to the attorneys' defense of other clients.  Analyzing the issue under Fed. R. Civ. P. 34, which requires a party responding to a discovery request to produce documents "in the responding party's possession, custody, or control," the court explained that "whether [XTO] must disclose the information turns on whether it controls the information." The court cited to the general proposition that "clients control case files in their attorneys' hands," but found that that degree of control applies only to documents "gathered or created by its attorneys pursuant to their representation of that client, [as only] such documents are clearly within the client's control."  (Emphasis in original.) Quoting *Poppino v. Jones Story Co.*, 1 F.R.D. 215 (W.D.Mo. 1940), the *XTO* court explained:

> The mere fact, however, that the attorney for a party has possession of a document does not make his possession of the document the possession of the party.  The paper may be one of his private papers which he had before the relation of attorney and client was established.  It is inconceivable that he should be required to produce such a paper for the inspection of the client's adversary.

Finding that the documents the insurer had requested from XTO were not documents that XTO's counsel had created or obtained for purposes of XTO's case, the court thus denies the insurer's request for the documents.

This Court finds that although *XTO* involves a different type of discovery request (a request for production instead of interrogatories) and a different controlling Rule of Civil Procedure, its analysis is nevertheless persuasive.  The information that Travelers seeks from Merlin and Impact – information about their associations with Mr. Cartaya in other cases – are the sorts of "private papers" that Merlin had "before the relation of attorney and client [between GSL and Merlin] was established."  Nothing in the record suggests that Merlin obtained files from other cases involving Mr. Cartaya for the purpose of this litigation; indeed, Travelers is emphatic in pointing out that although that GSL (through Merlin) <u>should have</u> collected and disclosed information about Mr. Cartaya's prior engagements, it did not.  Thus, because Merlin's possession of its other clients' files is not related to its representation of GSL in this case, the Magistrate Judge correctly applied *XTO* to conclude that GSL was not required to respond to the interrogatories with information known only to Merlin or Impact.

Travelers cites to several cases that it contends stand for the proposition that "GSL has a duty to respond to the interrogatories with the information its attorneys have that is responsive." None of the cases stands for so stark a rule, much less in circumstances apposite to the instant case.  In *Hickman v. Taylor*, 329 U.S. 495 (1947), the Supreme Court, essentially citing the attorney work-product privilege, refused to allow a party's opponent to obtain, via a discovery request, witness statements that the party's attorney had taken about the incident that was the subject of the lawsuit. In a bit of *dicta*, the Court explained

> To the extent that petitioner was seeking the production of the
> memoranda and statements gathered by [the attorney] in the course

> of his activities as counsel, petitioner misconceived his remedy. [Fed. R. Civ. P.] 33 did not permit him to obtain such memoranda and statements as adjuncts to the interrogatories addressed to [the defendant].  A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney.  But that is not this case.

Travelers seizes on the penultimate sentence in the quote – "A party cannot refuse to answer interrogatories . . . " – but fails to recognize that the statement is plainly *dicta* ("that is not this case").  More importantly, Travelers' interpretation of that single sentence is incorrect.  In *Hickman*, the opponent tendered a combined interrogatory and request for production, asking first of the defendant whether any witness statements were taken, and then, if they were, demanding the production of those statements.  The statement Travelers relies upon announces the unremarkable rule that the defendant could not, when answering the <u>interrogatory</u> – "were any witness statements taken?" – decline to answer because the statements were taken by the defendant's attorneys, not by the defendant itself.  *See e.g. Stark-Romero v. National R.R. Passenger Co.,* 275 F.R.D. 551, 558 (D.N.M. 2011) (in denying a request for admission, a party's obligation to conduct a reasonably inquiry "means that a party has to ask their counsel, and if their counsel knows the answer, the need to use that information to admit or deny").   But the full quote makes clear that the Court was not persuaded that Rule 33 would allow the opponent to obtain information in the possession of the party's <u>counsel</u> by serving interrogatories and production requests on the <u>party</u>, which is precisely what Travelers seeks to accomplish here.

Other cases Travelers relies upon are even more inapposite.  *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 628-29 (N.D.Ok. 2009), concerns the application of the attorney work-product privilege, and turns on the fact that the privilege protects the <u>product</u> of the attorney's inquiry but does not shield the <u>facts</u> from an appropriate discovery request. That principle is not implicated here, as the question of whether Merlin or Impact's records are privileged work

product is not before the Court.  *Brunswick Corp. v. Suzuki Motor Co.*, 96 F.R.D. 684, 686 (E.D.Wi. 1983), is also irrelevant.  There, a corporation claimed that it could not answer questions about the business operations of its subsidiaries because the subsidiaries operated independently; the court found that, as a factual matter, the requested information was available to the parent.

The one case that Travelers cites that is even arguably apposite is *Naismith v. Professional Golfer's Assn.*, 85 F.R.D. 552, 564-65 (N.D.Ga. 1979).  There, in conjunction with a fee dispute, the plaintiff propounded discovery requests that apparently asked the defendant to disclose "the defendant's attorneys' knowledge about fee awards" in the local community.  The defendant opposed the request, arguing that it "seek[s] to discover information which defense counsel have obtained as individual members of the Bar, not information obtained in in their role as defense counsel in this case."  The court agreed that "a party served with interrogatories has an obligation to reveal information held by his attorneys," but it noted that "neither party here has cited any case dealing with discovery of information in the possession of a party's attorney where the information was obtained outside the course of the instant litigation."  Without bothering to explore the matter further, the court in *Naismith* decided that because a different Federal Rule might apply (the protection of attorney work product in Fed. R. Civ. P. 26(b)(3)), and the defendant had not invoked <u>that</u> rule, the court would direct production.  This Court finds *Naismith* to be poorly-reasoned and unpersuasive.  There, the court recognized the possibility that the analysis might change if the information possessed by counsel was obtained during the course of representation or outside of it, but declined to consider the matter further.  *XTO*, on the other hand, recognizes the distinction and offers a persuasive explanation why the two types of information should be treated differently.

Travelers also argues that the information about Mr. Cartaya's previous activities should be discoverable from Merlin and Impact now because GSL was obligated to obtain that information from Merlin and Impact and disclose it to Travelers during the appraisal, but did not. Travelers argues that a ruling allowing that information to be withheld now "rewards the party who committed the wrong in the first place." But this appeal to abstract concerns of fairness finds no tether in Rule 33 or any other principle regarding discovery. And in any event, it does not appear that the information Travelers seeks is impossible to obtain in any way other than an interrogatory or request for production directed at GSL. It would seem that Travelers could very well obtain the requested material directly from Merlin and Impact via subpoenas issued to those entities.

Accordingly, the Court overrules Travelers' Objections and affirms the Magistrate Judge's discovery ruling in its entirety.

        2.  <u>December 5, 2019 ruling</u>

In December 2019, Travelers issued a request for production to GSL, requesting that it produce, essentially, the documents that detail GSL's fee agreement with Merlin; GSL objected on the grounds of relevance. At a hearing before the Magistrate Judge on December 5, 2019, Travelers argued that the request was relevant for two primary reasons: (i) there was some ambiguity as to exactly when Merlin had been retained by GSL, and Travelers desired the fee agreement to settle the question; and (ii) if Merlin itself had a contingent interest in the appraisal award, that fact would be one that would have been required to be disclosed during the appraisal (and it was not). At the conclusion of the hearing, the Magistrate Judge ruled on the request, finding that "the fee agreement itself is of marginal relevance at this stage" and that production of that agreement would not be "proportional to the needs of the case at this time." The

Magistrate Judge found that Travelers "can obtain that discovery by alternative means, such as through a 30(b)(6) deposition of GSL and/or through additional written discovery."

Travelers filed timely Objections, arguing that the Magistrate Judge erred in finding that Travelers' need for disclosure of the fee agreement was not proportional to the issues to be resolved in the case, particularly because the Magistrate Judge did not identify and weigh the proportionality factors found in the Federal Rules of Civil Procedure. Notably, Travelers' argument is limited to the contention that production of the fee agreement is necessary to establish the date on which Merlin had been retained by GSL.

Discovery requests must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors that bear on the proportionality inquiry include: (i) the importance of the issues at stake in the action; (ii) the amount in controversy; (iii) the parties' relative access to relevant information; (iv) the parties' resources; (v) the importance of the discovery in resolving the issues; and (vi) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

The Magistrate Judge did not explicitly discuss each of these factors (or even the factors generally) as part of his oral ruling, but this Court sees no authority obligating a Magistrate Judge to do so.[5] But it is clear that any proportionality review must begin with a determination of the relevance of the requested discovery, as the degree of relevance of the requested discovery will necessarily drive the remaining questions of how many resources should reasonably be expended in pursuit of it. Here, the Magistrate Judge found the relevance of the fee agreement –

---

[5]     The Advisory Committee notes to the 2015 Amendments that explicated the proportionality requirement note that it does not place on the party seeking discovery the burden of addressing all proportionality considerations." If the movant is not required to address all the factors, surely the Court is not required to either.

and more specifically, the date on which GSL and Merlin entered into it – as "minimal."  This Court agrees for several reasons.

First, Mr. Mammel has represented to the Court that Merlin was retained by GSL (albeit ambiguously "in some capacities"[6]) "on or about April 27, 2017."  **(# 89)**.  That date is clearly within the ongoing appraisal proceedings, which concluded in September 2017.  Travelers' argument for why the date of retention is relevant is that if Merlin was affiliated with this case during the time frame of the appraisal, GSL was obligated to disclose to Travelers facts relating to Merlin's affiliation with Mr. Cartaya (an obligation that GSL allegedly did not discharge).  At least as to Travelers' description of disclosure obligations, the issue is simply a binary one -- if Merlin represented GSL at some point in time during the ongoing appraisal, GSL was obligated to make that disclosure.  Based on Mr. Mammel's admission that Merlin was representing GSL as early as April 2017, that would seem to end the inquiry: Merlin represented GSL during the ongoing appraisal, thus triggering whatever disclosure obligations might apply as of that time.  In that respect, production of the fee agreement would be of practically no relevance, as the essential fact – Merlin's representation of GSL during the appraisal – has now been conceded.

Secondly, Mr. Mammel's filing indicates that the "signed feel agreement is undated." Admittedly, Travelers is in no position to dispute that fact, but taking Mr. Mammel at his word, production of an undated fee agreement would be useless in establishing the very purpose for which Travelers seeks it.  In such circumstances, the fee agreement's relevance would seem to be minimal.

---

[6]     The Court has no interest in semantic games. The Court will treat Mr. Mammel's filing as representing that Merlin assumed representation of GSL <u>in all respects material to this litigation</u> as of April 27, 2017.

Travelers has its doubts about Mr. Mammel's veracity, however. It purports to have evidence that suggests that Mr. Mammel was involved in communications between GSL and Mr. O'Driscoll as early as February 2017, earlier that Mr. Mammel concedes and even before Mr. Cartaya was appointed as GSL's appraiser. But even this fact undercuts the relevance of the fee agreement in establishing the date Merlin commenced representation of GSL. It may very well be that, as a practical matter, Merlin undertook representation of GSL before any formal fee agreement was signed, in which case the fee agreement itself is of no probative value as to the date representation actually began. It may be that the fee agreement itself is dated, and dated earlier than April 2017, but such evidence would simply be cumulative to Travelers' existing evidence of Mr. Mammel's involvement in February 2017. But ultimately, production of the fee agreement itself will not meaningfully resolve the existing dispute.

When weighed against the ephemeral (or "minimal," as the Magistrate Judge charitably put it) relevance of the fee agreement itself, the remaining proportionality factors click into place. This case may involve claims for large sums of money, but the fee agreement itself will have a nearly inconsequential effect on whether those claims are proven and the sums recovered. Arguably, Travelers lacks alternative sources of access to obtain the fee agreement itself, but it has ample evidence, including Mr. Mammel's concession of representation occurring during the appraisal proceeding and evidence of activity as early as February 2017, that renders the fee agreement itself mostly meaningless in the inquiry. Although the Court acknowledges Travelers' point that production of the fee agreement would be of inconsequential difficulty or expense, the proportionality inquiry looks at more than just cost and the technical burdens of effectuating production; it also looks at whether production of the requested discovery could lead to undue embarrassment, unnecessary exposure of private information, or needless expansion of

the issues in dispute. *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 403-404 (D.Wy. 2017) (allowing only partial discovery of plaintiff-employee's social medial postings). In this regard, the Court notes that because Travelers' arguments as to relevance are limited to the <u>date</u> on the fee agreement, even if this Court were to contemplate ordering production, it would order production of a redacted version of the fee agreement that contained nothing more than the dated signatures of the contracting parties. But, as noted above, it appears that the agreement may be undated, making even production of this minimal bit of information meaningless.

In such circumstances, the Court cannot say that the Magistrate Judge erred in finding that burdens of disclosure of the fee agreement was not proportional to Travelers' need for it was clearly erroneous or contrary to law. Travelers' Objections are overruled and the Court affirms the Magistrate Judge's ruling denying Travelers' request for production.

## CONCLUSION

For the foregoing reasons, Travelers' Objections **(# 86, 105)** are **OVERRULED** and the Court **AFFIRMS** the Magistrate Judge's October 8, 2019 **(# 82)** and December 5, 2019 **(# 98)** discovery orders.  GSL's Motion for Judgment on the Pleadings **(# 99)** as to Travelers' Twelfth Affirmative Defense is **DENIED**.  Travelers' Motion for Leave to Amend its Answer **(# 117)** is **GRANTED IN PART**, insofar as Travelers is granted leave to file a Second Amended Answer that asserts counterclaims premised upon Mr. Cartaya's alleged misrepresentations regarding the Lefever bid, and **DENIED IN PART** in all other respects.

Dated this 24th day of July, 2020.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge