IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-00746-MSK-SKC

GSL GROUP, INC.,

    Plaintiff,

v.

TRAVELERS INDEMNITY COMPANY,

    Defendant.

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Travelers") Motion for Partial Summary Judgment **(# 157, 158)**,[1] the Plaintiff's ("GSL") response **(# 162)**, and Travelers' reply **(# 169)**; and Travelers' Motion To Take Judicial Notice **(# 159)**, GSl's response **(# 164)**, and Travelers' reply **(# 166)**.

## FACTS

The Court summarizes the pertinent facts here and elaborates as necessary in its analysis. GSL owns certain commercial property in Denver, Colorado that was insured by Travelers. On June 5, 2015, a hailstorm allegedly caused damage to GSL's property, and GSL made a claim on the Travelers policy. GSL retained a public adjuster, Derek O'Driscoll, and his firm, Impact Claim Services ("Impact"), to pursue the claim.

---

[1] Due to a filing error, Docket #157 appears to be a duplicate of Docket # 158, although the latter is supported by exhibits while the former is not.

Travelers' insurance policy contains a provision that reads as follows:

> 2. **Appraisal**
>
> If we and you disagree on the value of the property [ ] or the amount of the loss . . . either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire. . .  The appraisers will state separately the value of the property [ ] or the amount of the loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.

The parties were unable to reach an agreement on the value of the loss and, pursuant to policy provisions, engaged in an appraisal process.  GSL selected Juan Cartaya as its appraiser; Travelers selected Trent Gillette. Mr. Cartaya and Mr. Gillette discussed their appraisal valuations and the underlying materials and eventually reached an agreement that GSL's loss was $1.6 million.  Travelers paid that amount to GSL.

Dissatisfied with Travelers' handling of its claim, GSL brought this action **(# 3)** bringing claims under Colorado law for common-law bad faith breach of an insurance contract and for unreasonable delay in payment of insurance benefits in violation of C.R.S. § 10-3-1115 and -1116.  Travelers asserted various affirmative defenses **(# 19).** Among these are that GSL's claims "are barred [by] the terms, provisions, limitations, or exclusions of the policy, including, but not limited to, the Policy's appraisal provision that requires both parties to select a competent and impartial appraiser."  In addition, Travelers asserts a counterclaim **(# 138)**  seeking vacatur of the appraisal award on the grounds that Mr. Cartaya misrepresented facts relating to a contractor's bid.

Travelers now moves **(# 157, 158)** for summary judgment in its favor on both its affirmative defense and counterclaim challenging the appraisal proceedings and award. At the heart of the affirmative defense and counterclaim, is Traveler's contention that Mr. Cartaya was

not an "impartial" appraiser as required by the policy. It contends that Mr. Cartaya had extensive, pre-existing, and mutually-beneficial business arrangements with Mr. O'Driscoll and the Merlin Law Firm, GSL's counsel in this matter, and that Mr. Cartaya failed to disclose those connections  Travelers also contends that Mr. Cartaya engaged in misconduct during the appraisal proceeding, misrepresenting the amount of a bid he allegedly received from a contractor for roof repairs.

Ultimately, Travelers also seeks recoupment of the $1.6 million it paid GSL pursuant to the policy. Travelers also requests **(# 159)** that the Court take judicial notice of court filings and other documents that establish Mr. Cartaya's appointment on behalf of clients of the Merlin Law Firm in other cases. [2]

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

---

[2]     GSL argues that its stipulation to undisputed facts in its summary judgment response mooted Travelers' motion seeking judicial notice. To the extent that GSL did not fully stipulate to all the matters that Travelers' motion encompasses, the Court finds the differences to be immaterial. Thus, that motion is denied as moot.

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Mr. Cartaya's partiality**

Travelers seeks judgment on GSL's insurance claim because it is barred by the policy because GSL did not appoint an "impartial" appraiser. Travelers bears the burden of proof on this issue. The issue is governed by Colorado law.

In *Owners Insurance Co. v. Dakota Station II Condominium Assn.*, 443 P.3d 47 (Colo. 2019), the Colorado Supreme Court addressed the scope of how to define an appraisal provision's requirement of appraiser impartiality. There, the court considered an appraisal provision identical to the one at issue here. Each party designated their appraisers, and when the appraisers couldn't resolve their differences, they submitted the question to a jointly-selected umpire. The umpire resolved the dispute and the insurer paid the claim. Later, the insurer came to believe that the insured's appraiser had not been impartial and sought to vacate the appraisal award. The Colorado Supreme Court's opinion recites two specific grounds the insurer asserted: (i) that the insured's appraiser entered into a contract with the insured that capped the appraiser's fee at a percentage of the final insurance award, giving the appraiser an interest in the outcome of the proceedings; and (ii) the appraiser testified at an evidentiary hearing that she felt that "it's appropriate to be an advocate for an insured when you're acting as an appraiser."[3] The Supreme Court's analysis of the dispute was somewhat focused by the Court of Appeals' finding that appraisers "do not violate their commitment by acting as advocates for their respective selecting

---

[3] The Court of Appeals' decision recites several additional facts that were asserted by the insurer as evidence of the insured's appraiser's partiality. *See Owners' Ins. Co. v. Dakota Station II Condo. Assn. Inc.*, 444 P.3d 784, 790-92 (Colo.App. 2017). One of those grounds was that the appraiser failed to disclose to the insurer that she and the insured's public adjuster "were partners." The trial court found that, as a factual matter, no partnership or other meaningful business relationship existed. Thus, it did not reach the question of whether the duty of impartiality included the duty to disclose relationships between an appraiser and the representatives of the party retaining him or her. The Colorado Supreme Court did not recite or analyze this issue and its decision provides no guidance on the question of when business relationships between the appraiser and others associated with the party proffering that appraiser give rise to partiality concerns.

5

parties." 443 P.3d at 50.  The Supreme Court disagreed, finding the concepts of "impartiality" and "advocacy" to be "fundamentally incompatible."  443 P.3d at 52.  Instead, the court endorsed a standard of impartiality based on "the plain meaning of the word impartial" – that is, appraisers must be "unbiased, disinterested, without prejudice, and unswayed by personal interest, [and] must not favor one side more than another."  443 P.3d at 53.  The court rejected the suggestion that the appraiser's contingent fee arrangement with the insured rendered the appraiser "partial as a matter of law," based largely on factual findings that the appraiser did not believe the contingent fee applied and because the final award did not approach the percentage threshold of the fee agreement.  443 P.3d at 53-54.  The court then remanded the matter to the trial court for findings as to re-consider whether the appraiser's conduct complied with the impartiality standard.

Here, Travelers contends that the following facts, most of which are materially undisputed, reflect Mr. Cartaya's partiality:

• Between 2009 and 2017, Mr. Cartaya had been appointed as appraiser in at least seven cases involving clients of the Merlin Law Group, and had been appointed as appraiser in five cases involving Impact.  Mr. Cartaya was appointed appraiser in three additional cases involving either Merlin Law Group or Impact or both during the appraisal proceeding here.[4]

• In conjunction with Mr. Cartaya's work as a public adjuster, the Merlin Law Group provided legal services free of charge to more than 10 of Mr. Cartaya's clients.[5]

---

[4]   GSL contends that some of those cases did not result in completed appraisals, but does not dispute that Mr. Cartaya was appointed in each case.

[5]   According to Mr. Cartaya, those services took the form of Merlin Law Group attorneys drafting Civil Remedy Notices, a form of notice required by Florida law before an insured may bring suit against its insurer.  See Fl. St. 624.155(3).  Such notices require a recitation of the

• Attorneys of the Merlin Law Firm have referred clients to Mr. Cartaya for appraisal services and Mr. Cartaya has referred legal work to at least three attorneys at the Merlin Law Firm.

• Mr. Cartaya testified in his deposition that he views himself as an "impartial advocate" who "prepares [his] evaluation and opinion based on facts." When asked who he advocates for, he testified "I advocate for myself, but mainly whoever hires me."

• Mr. Cartaya testified that he advertises his services as a public adjuster and appraiser via a website that describes him as "an effective advocate for policyholders."

It is undisputed that Mr. Cartaya did not disclose any of the listed facts to Travelers at any time prior to completion of the appraisal proceedings.[6]

Based on the standard of impartiality set forth in *Dakota Station*, the Court finds that the undisputed evidence establishes that Mr. Cartaya was not "impartial" as required by the policy. *Dakota Station* makes clear, advocacy and impartiality are fundamentally at odds, yet Mr. Cartaya acknowledged that he advertises his services as providing "an advocate for policyholders." As the Colorado Supreme Court stated, "we can't endorse a reading of the

---

"facts and circumstances giving rise to the violation" and reference to the specific policy language implicated, and thus, are not mere *pro forma* documents.

[6] The parties dispute whether Mr. Cartaya agreed to abide by the disclosure requirements contained in a 2014 version of a bulletin issued by the Colorado Department of Regulatory Affairs ("DORA") governing insurance appraisers, or whether Mr. Cartaya agreed to a 2015 version of that DORA bulletin. The 2014 version is somewhat stricter with regard to mandatory disclosures, directing that appraisers disclose "[a] current or previous relationship with any of the parties to the agreement to appraise or the appraisal proceeding, their counsel or representatives, including licensed public adjusters, a witness, another appraiser or the umpire." The 2015 version omits this requirement and only requires disclosure of facts that might be "likely to affect an appraiser's interest in the amounts determined by the appraisal process." (Emphasis added.) Ultimately, this Court's resolution of this case does not turn on the making of DORA-based disclosures, and thus, the Court need not address the dispute over which version of the bulletin applies.

impartiality requirement that suggests one can simultaneously be an 'advocate' for one of the parties" – here, GSL, the policyholder -- "and be 'impartial.'" 443 P.3d at 52. Although the Court is hesitant to ascribe much meaning to the sort of common puffery of advertising, here, the word "advocate" has been chosen repeatedly by Mr. Cartaya, both on his website and in his deposition, to describe his own conception of his role. To the extent Mr. Cartaya views himself as an "advocate for policyholders" – and he unambiguously does – he is incapable of being "impartial" according to *Dakota Station*.

      Likewise, the Court finds that the undisputed facts reflect that Mr. Cartaya did indeed have a "personal interest" in the appraisal, given his close and elaborate business relationships with both Impact and the Merlin Law Group. The mere fact that Mr. Cartaya Impact or Merlin Law Group might frequently recommended their clients to retain Mr. Cartaya appraiser is not, of itself, suggestive of an undue interest. It is not uncommon for people who are satisfied with a particular professional's work to want to work with that professional again. (Indeed, this Court has repeatedly requested that criminal defendants needing competence evaluations be seen by a handful of particular psychiatrists, simply because the Court has been impressed with their work.) But Mr. Cartaya's ties to Impact and the Merlin Law Group run deeper than that. Most prominently, it is undisputed that the Merlin Law Group has frequently provided free legal services to Mr. Cartaya's clients. One is reminded of the adage that "there is no such thing as a free lunch." Here, it is reasonable to believe that Mr. Cartaya would feel obligated to return that favor, such that he could be swayed in his appraisal activities in this case by that personal interest.

      Accordingly, the Court finds that there is no genuine dispute of fact as to whether Mr. Cartaya was an "impartial" appraiser as required by the terms of the policy. He was not.

GSL argues that *Dakota Station* should be read as requiring a showing that the Court's focus must not be on the appraiser's <u>state of mind</u>, but on his or her <u>conduct</u>. GSL points to the Supreme Court's statement that "the appraiser's conduct must be evaluated using the plain meaning of the word impartial." 443 P.3d at 53. GSL interprets that phrasing to create a "functional test" that requires more than just a showing of his partiality, and instead requires proof that the appraiser's bias "actually affected the appraisal process or award." *Citing Cooper Oaks Master Home Owners Assn. v. American Family Mut. Ins. Co.*, 2018 WL 3536324 (D.Colo. Jul. 23, 2018) (slip op.). GSL argues that neither Mr. Cartaya's claimed advocacy on behalf of policyholders nor any personal interest arising from his business relationships with Merlin Law Group or Impact can be tied to a particular decision made during the appraisal process. Indeed, GSL notes, Mr. Gillette conducted his own appraisal and eventually agreed with Mr. Cartaya on the appropriate amount of the loss.

This Court disagrees with GSL that one must be able to point to a tangible action taken during the appraisal in order to deem an appraiser partial. In *Copper Oaks*, this Court discussed two approaches to that issue that were discernable in caselaw. The "federal approach," including " all of those [decisions] issuing from the federal court in the District of Colorado," applied "a categorical rule[: i]f the appraiser has a duty to be 'impartial' and is not, then he or she is disqualified without any showing of an effect of the lack of impartiality on the appraisal process or award." The Court contrasted this rule with a potential "state rule" that "requires a showing that the lack of impartiality affected a particular action, decision or analytical choice made by the appraiser." Notably, the only apparent source of that "state rule" cited in *Copper Oaks* was the Colorado Court of Appeals' decision in *Dakota Station* and this Court observed that "there are

9

many state trial court decisions that employ the "federal," categorical approach." 2018 WL 3536324 at *9.

In *Copper Oaks*, this Court declined to "weigh in on" which rule was correct, finding that the outcome was the same either way. The Colorado Supreme Court's reversal of the Court of Appeals opinion in *Dakota Station* would appear to wipe away the sole case justifying the "state rule," leaving the categorical "federal rule" as the predominant holding. Nothing in the Colorado Supreme Court's *Dakota Station* opinion purports to adopt the Court of Appeals' conclusion that a tangible manifestation of the appraiser's partiality was necessary. Indeed, the only fact that the Colorado Supreme Court's opinion discussed about the appraiser's partiality was her statements touting her belief that "it's appropriate to be an advocate for an insured." Yet the Colorado Supreme Court remanded the case for further factfinding. If GSL is correct here, the Supreme Court could have simply found that there was no evidence of the appraiser's potential partiality infecting the award, such that a remand was unnecessary. The fact that the Supreme Court did not suggests that the categorical rule – that partiality alone is enough to void an award – is the correct one. Moreover, the Supreme Court's decision in *Dakota Station* emphasizes that the policy term "impartial" should be afforded its dictionary definition of "unbiased, disinterested, without prejudice . . . ." 443 P.3d at 53. These terms describe a state of mind, not tangible acts. If the Colorado Supreme Court wished to require that an appraiser take <u>actions</u> manifesting partiality before the appraiser could be deemed to have a partial state of mind, it was free to do so. It did not.

As in *Copper Oaks*, however, this Court finds that it is not necessary to dispositively decide whether an appraiser's partiality affected the appraisal process because, here, there is evidence that it did. The Court turns to that issue next.

10

### C. Mistake in the award

Lefever Building Systems provided GSL a written bid totaling $603,864 to conduct roof repairs on the property. That sum covered all repairs on three separate sections of GSL's property. A subset of that estimate, approximately $23,000, was allocated to "purlin replacement" on the north section of the building.

When Mr. Cartaya prepared his estimate of GSL's loss, he included a line item for "roof purlins repair (Lefever bid)" in the amount of $603,864 – the precise amount of Lefever's bid for all roof repairs. Mr. Cartaya's estimate separately listed additional line items for repair and replacement of metal roofs in each of the three areas, all attributed to the Lefever bid, adding yet another roughly $550,000 to the estimate. At his deposition, Mr. Cartaya explained the situation as follows:

> When Mr. Gillette and I went out to the [site] the first time, we saw the extent of the damages to the purlins . . . and we were astonished. I contacted the purlin expert, Lefever, and discussed with him[7] . . . and we came up with these prices that are in my draft scope of damages. [The $600,000 figure is] the number I reached with Lefever.

Mr. Cartaya testified that all of the line items he attributed to Lefever bids were the result of oral discussions he had had with an unidentified person at Lefever, and that written documents did not exist. But the record reflects that GSL had received a written bid from Lefever that sought only $23,000 for purlin repairs and $600,000 for all roof repairs. Mr. Cartaya later told Mr. Gillette that he had received an oral bid from Lefever in the $600,000 amount for purlin repair, but Travelers has tendered an affidavit from a representative of Lefever that it did not provide any oral bid of any amount to Mr. Cartaya or anyone else. Certainly, Mr. Cartaya knew of the

---

[7] The parties appear to agree that there is no person at Lefever Building Systems with the name Lefever.

11

written bid from Lefever because his estimate included the precise amount of that bid, down to the dollar, but he listed it as purlin repair instead of the cost of all roof repairs.

In its summary judgment response, GSL refers to Mr. Cartaya's duplication of Lefever's estimate as a "mistake," but it cites to no evidence that reflects Mr. Cartaya's adoption of that label, nor does GSL offer any further explanation of how this mistake occurred.  Rather, the only evidence on this point in the portion of Mr. Cartaya's deposition quoted above, defending the correctness of his estimate.  The Court need not – and indeed, should not – attempt to resolve any credibility disputes on a motion for summary judgment, and thus, does not .  But the Court can, and does, find that the evidence reflects that Mr. Cartaya's appraisal of GSL's loss contains a grossly-overinflated estimate of the costs of roof repairs that is inconsistent with a written estimate of those costs that was in GSL's possession at the time Mr. Cartaya made his appraisal.  To the extent that *Dakota Station* requires a showing that an appraiser who was not "impartial" also engaged in actual conduct that suggests partiality, the Court finds that Mr. Cartaya's estimate relating to roof repairs satisfies that requirement.

GSL argues that, even if Mr. Cartaya tendered an inaccurate estimate of roof repair costs, there is no showing that that estimate actually infected the final appraisal award.  As GSL points out, Mr. Gillette and Mr. Cartaya discussed their estimates and eventually reached a "compromise" calculation of the loss to which both appraisers agreed.  The final award was not separately itemized, and thus, GSL argues that there is no proof that Mr. Cartaya's inflated estimate for roof repairs was actually embodied by the final award.  But Travelers has tendered the affidavit of Mr. Gillette, who states that he "did not draft an estimate of repairs for GSL's property [and] worked from the estimate prepared by Mr. Cartaya"  In his deposition, Mr. Gillette testified that Mr. Gillette states specifically that "Mr. Cartaya's $604,864 purlin bid . . .

12

was included in the $1.6 million appraisal award." GSL has not tendered any evidence to the contrary, and thus, the Court accepts Mr. Gillette's unopposed testimony that the inflated $600,000 bid for purlin repair was included in the final appraisal award.

Indeed, GSL makes much of the fact that Mr. Gillette agreed to the appraisal award. And one might very well criticize Mr. Gillette for joining in an award that included an inflated estimate for roof repairs without first obtaining a written estimate justifying that cost. But the Court is not called upon to make equitable findings or apportion fault at this point in the litigation. What is before the Court is the question of whether Travelers has shown that Mr. Cartaya was not "impartial" as the policy's appraisal provision required. The Court finds that the undisputed facts demonstrate that Mr. Cartaya was not "impartial." Because Mr. Cartaya was not impartial, the outcome of the appraisal proceeding is largely irrelevant. The terms of the insurance policy required that an appraisal be conducted by two impartial appraisers. Because Mr. Cartaya was not an impartial appraiser, there was no valid appraisal proceeding as contemplated by the policy and thus, no valid appraisal award. As a result, Travelers is entitled to summary judgment on its Twelfth Affirmative Defense.[8]

### D. Recoupment

Travelers paid the agreed-upon appraisal award to GSL. Having succeeded in setting aside that award, Travelers now seeks summary judgment on its counterclaim seeking recoupment in the amount of $805,054, reflecting the amount of the appraisal award less payments that Travelers had already made to GSL.

---

[8] Because the appraisal award is void *ab initio* due to Mr. Cartaya's partiality, the Court need not consider Travelers' request for judgment on its affirmative defense to set the award aside on the grounds of mistake.

Under Colorado law, recoupment is "the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising from the very matter giving rise to the plaintiff's claim." Recoupment is "purely defensive and not offensive." *Rabin v. Fidelity Nat. Property & Cas. Ins. Co.*, 863 F.Supp.2d 1107, 1119 (D.Colo. 2012); *see also Dawe v. Merchants Mortg. & Trust Corp.*, 683 P.2d 796, 800 (Colo. 1984) (noting "a well-recognized distinction between the maintenance of an original action and the assertion of a defense by recoupment"). What Travelers describes as a claim for "recoupment" is more appropriately characterized as a direct counterclaim against GSL for unjust enrichment – that is, that Travelers paid sums to GSL that it was not contractually obligated to pay and that it would be unjust to permit GSL to retain those funds.

Viewed through that lens, the Court cannot say that Travelers is entitled to summary judgment on a claim for unjust enrichment (or whatever other label might be affixed to such a counterclaim). The core of Travelers' theory is that it has no further liability whatsoever to GSL for the losses, such as roof repairs, that were considered by the appraisers. This contention does not appear to arise from a factual assertion that the losses sustained by GSL were not within the policy's grant of coverage. In other words, Travelers does not appear to be contending that, for example, damage to GSL's roof structure (including purlins and roof sheathing) did <u>not</u> occur because of the hailstorm or were <u>not</u> losses covered by policy. Indeed, it appears to be undisputed that at least <u>some</u> amount of GSL's covered losses remain unpaid by Travelers, as even Mr. Gillette appears to have agreed during the appraisal that GSL's losses exceeded the amount that Travelers had already paid.

Rather, Travelers' argument appears to be that because an appraisal was requested but no valid appraisal award resulted, Travelers has no further liability to GSL under the policy. The

14

Court does not read the policy so strictly. The appraisal provision is an <u>optional</u> mechanism that the parties to the policy may use to obtain a valuation of the loss without resorting to litigation. It states that "either [party] <u>may</u> make written demand for an appraisal. . . ." The policy is silent as to what happens if no appraisal is demanded, but a reasonable assumption is that the parties simply litigate the question of the amount of the loss. Because both parties may choose to <u>not</u> proceed to appraisal,[9] the Court cannot say that completion of an appraisal is a material condition precedent to Travelers' obligation to pay a claim for a loss that is otherwise covered by the policy. This Court has previously observed that, when an appraisal provision is invoked but no valid award results, the appropriate approach is to simply allow the matter to move to resolution by litigation, with the amount of the loss evaluated by the factfinder, "just as if [the insured] had never demanded appraisal in the first place."[10] *Copper Oaks Master Home Owners Assn. v. American Family Mut. Ins. Co.*, 416 F.Supp.3d 1115, 1128-29 & n. 10 (D.Colo. 2019). That rationale remains applicable here. GSL contends that Travelers still owes it benefits under the policy, and a trial in this action will be necessary to determine the nature and extent of any benefits that might still be owed.

For the same reason, the Court denies Travelers' request for summary judgment on GSL's bad faith claims. Travelers argues that it cannot be liable in bad faith unless there remains an outstanding loss that is covered by the policy. Here, whether Travelers owes additional

---

[9] The policy is silent as to whether a party who demanded an appraisal may withdraw that demand before the process is complete. The Court sees no reason why such a demand would be treated as irrevocable under the language of the policy, but it need not reach that question here.

[10] The *Copper Oaks* decision was based on an assumption that appraisals can fail without either party to the policy being at fault, and this Court in that case was explicit that it was not making findings as to fault. 416 F.Supp.3d at 1128 n. 9 & 10. Likewise, here, the parties have not addressed the question of whether GSL is at fault for Mr. Cartaya's lack of impartiality and thus, the Court makes no findings on that issue.

benefits to GSL is a matter that will be resolved at trial, as will GSL's contention that Travelers acted in bad faith or unreasonably delayed payment of those benefits prior to the appraisal proceedings. Accordingly, the Court vacates the appraisal award and this case will proceed to trial on GSL's bad faith claims and Travelers' counterclaim for unjust enrichment.

## CONCLUSION

For the foregoing reasons, Travelers' Motion for Summary Judgment **(# 157, 158)** is **GRANTED IN PART AND DENIED IN PART**. The Court grants the motion to the extent that the Court finds that Travelers is entitled to judgment on its Twelfth Affirmative Defense to the extent that the defense seeks to vacate the appraisal award due to Mr. Cartaya's partiality. The Court deems the appraisal award vacated. The Court denies the motion insofar as there remains the question of whether GSL is entitled to benefits under the policy and whether Travelers engaged in bad faith or unreasonable delay by not paying those benefits earlier, and whether Travelers is entitled to recover some or all of the amounts it paid to GSL pursuant to that award, whether via the defense of recoupment or through a counterclaim sounding in unjust enrichment. Travelers' Motion for Judicial Notice **(# 159)** is **DENIED AS MOOT**.

The parties shall begin preparation of a Proposed Pretrial Order and shall jointly contact chambers to schedule a Pretrial Conference.

Dated this 16th day of September, 2021.

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
Senior United States District Judge